IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| **SAMSARA INC.,** | |
| *Plaintiff,* | Civil Action No. 7:26-cv-00225 |
| v. | **JURY TRIAL DEMANDED** |
| **MOTIVE TECHNOLOGIES, INC.,** | |
| *Defendant.* | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Samsara Inc. ("Samsara") alleges as follows in this Complaint against Defendant Motive Technologies, Inc. ("Motive").

**INTRODUCTION**

1.       This case concerns Motive's systematic, willful infringement of Samsara's groundbreaking, patented innovations that have revolutionized physical transportation. For years, Motive has sought to replicate Samsara's patented technology at nearly every turn. Today, Motive's deliberate infringement and copying pervade nearly every key aspect of Motive's product offerings.

2.       Through its significant investment in research and development, Samsara has created a suite of market-leading products and services in the fields of integrated cloud operations, IoT connectivity, and artificial intelligence ("AI"). Samsara's products and services improve nearly every aspect of transportation safety, efficiency, and sustainability, including through the use of sophisticated hardware that leverages and integrates with AI and Samsara's proprietary cloud services. Samsara's patent portfolio—the fruit of years of pioneering research—protects these critical technological advances.

3.     Motive entered this industry late, after Samsara's technology and success became visible in the marketplace.  Samsara's patents cover critical aspects of virtually all its (and Motive's) products—from AI-powered safety event and driver behavior detection, to IoT hardware for resource tracking, to aggregation of data from drivers into a user-accessible cloud platform. Unable to develop its own unique technology to compete with the products and technology Samsara developed, Motive embarked on a deliberate strategy to use and copy Samsara's patent-protected innovations, offering many of the same products and services as Samsara.

4.     Today, nearly every corner of Motive's product ecosystem is predicated on the unauthorized use of Samsara's patents, and infringement of Samsara's intellectual property is an inextricable part of Motive's business model.  Indeed, Motive touts as the key benefits of its product offerings "Driver Safety," "Fleet Management," and "Equipment Monitoring."  But each of these benefits—to the extent Motive's products actually deliver them—is built on Samsara's intellectual property.[1]  For example, and as detailed below (*infra* § III), Samsara's intellectual property, including U.S. Patent No. 11,995,546, is fundamental to Motive's driver safety offerings. Motive's fleet management and equipment monitoring products similarly rely on Samsara's intellectual property, including U.S. Patent Nos. 12,000,940; 12,117,546; and 12,140,445.

5.     Motive's strategy to copy Samsara's patented technology was conceived of and directed by the highest levels of Motive's leadership.  On information and belief, Motive's leaders have acknowledged that Motive has intentionally and systematically copied key aspects of Samsara's products and the innovative, patented technology on which they are built.  On information and belief, the highest levels of Motive's leadership have devised and directed a

---

[1] Motive Technologies, Inc., Form S-1 at 4 (Dec. 23, 2025),
https://www.sec.gov/Archives/edgar/data/1646681/000162828025058773/motive-sx1.htm.

business plan to study, reverse engineer, and replicate practically every key aspect of every product Samsara provides. On information and belief, at the express direction of Motive's leadership, Motive engineers use Samsara's products as the first step in their product development efforts.

6. Samsara now files this lawsuit to put an end to Motive's knowing and willful patent infringement that pervades Motive's key product offerings.

## NATURE OF THE ACTION

7. This is a civil action for infringement of United States Patent Nos. 12,140,445; 11,995,546; 12,000,940; and 12,117,546 (collectively, the "Patents-in-Suit"), under the patent laws of the United States, 35 U.S.C. § 1 et seq.

8. Samsara seeks judgment that Motive is liable for direct, indirect, and willful infringement of the Patents-in-Suit by making, using, offering for sale, selling, and/or importing the accused products described below. Samsara seeks damages and injunctive relief for Motive's infringement.

## THE PARTIES

9. Samsara is a Nevada corporation with its headquarters and principal place of business located at 1 De Haro Street, San Francisco, CA 94107. Samsara is the assignee and current owner of the Patents-in-Suit.

10. Motive is a Delaware corporation with its headquarters and principal place of business located at 55 Hawthorne Street, Suite 400, San Francisco, CA 94105.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

12. This Court has personal jurisdiction over Motive because Motive regularly conducts business in the State of Texas and in this District. On information and belief, this includes

providing hardware, software, firmware, platforms, and/or providing services or engaging in activities in Texas and in this District that infringe one or more claims of each of the Patents-in-Suit, as well as inducing and contributing to the direct infringement of others through acts in this District.

13.    Motive has also, on information and belief, purposefully and voluntarily placed products and/or provided services that practice and/or implement the methods, systems, and apparatuses claimed in each of the Patents-in-Suit into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District.

14.    Venue is proper in this District, pursuant to 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), because Motive has regular and systematic contacts within this District and has committed acts of infringement within this District.

15.    Motive is a registered business in Texas, and has regular and established places of business in the Western District of Texas.  Motive has an office at 924 East 7th Street, Suite 350, Austin, Texas 78702, which is within the Western District of Texas.  Motive publicly stated that its Austin office was intended to "serve as a hub for Motive's growing sales team, with roles dedicated to supporting customers in Texas."[2]

16.    On information and belief, Motive's operations in this District include client outreach and sales for each of the accused products and related or supporting services.  On information and belief, Motive has customer-facing personnel who regularly conduct business in the Midland-Odessa Division, including by providing fleet management, driver safety, and equipment monitoring products and services to oil and gas, trucking, and logistics companies operating in the Permian Basin.  On information and belief, Motive maintains active commercial

---

[2] https://gomotive.com/blog/motive-opens-austin-texas-office/.

relationships with multiple customers headquartered or with operations in the Midland-Odessa Division, including in Midland, Ector, Andrews, Martin, Crane, and Upton Counties, where Motive's accused hardware (including Vehicle Gateways, AI Dashcams, and Asset Gateways) is installed in customer vehicles, deployed at customer worksites, and used continuously to provide the accused services. On information and belief, Motive's accused software platform (including the Motive Cloud Platform Safety Hub) is accessed by, and supports operations of, fleet customers based in this Division. Motive also provides technical support to customers for its products in this Division.

17. Motive has committed acts of infringement within this District. Motive uses the accused products in this District in manners that practice the claims of the Patents-in-Suit, including by testing the accused products and by using the accused products at its offices and premises in this District.

18. Motive's infringement adversely impacts Samsara in this District.

## FACTUAL BACKGROUND

### I. Samsara Pioneered a Technological Revolution in Physical Transportation

19. In 2015, Sanjit Biswas and John Bicket founded Samsara. They met as graduate students at the Massachusetts Institute of Technology ("MIT") in its Computer Science and Artificial Intelligence Laboratory. Since its inception, Samsara's mission has been to ensure the safety, efficiency, and sustainability of the operations that power the global economy. Through significant investments in research and development, Samsara has pioneered a new field in data-driven operations and developed a comprehensive suite of cloud-based fleet management products. Samsara's services improve safety with AI-powered training and protection programs, help organizations identify and correct inefficiencies through end-to-end visibility, and improve

sustainability and efficiency efforts by monitoring carbon emissions as well as fuel and energy usage—resulting in millions of gallons of annual fuel savings.

20.     Initially, Samsara set out to solve longstanding problems in the physical transportation industry by creating innovative digital solutions for the physical operations of connected fleets.  At the time, businesses with commercial vehicle fleets were struggling with pressure to overcome high accident rates while still reducing costs and improving services. Commercial vehicle fleets are the backbone of many physical operations and are required to deliver and transport services, goods, and people in virtually all industries.  Samsara's goal was to develop and provide cloud- and AI-based solutions to address these problems.

21.     At the core of Samsara's success has been its pioneering research and development to provide fundamental contributions in the fields of integrated cloud operations, IoT connectivity, and artificial intelligence.  As an important part of Samsara's research and development activities, inventors working for Samsara have been granted over 100 U.S. patents, with over 100 applications currently pending.  Those contributions are reflected in Samsara's patent portfolio, including the patents at issue in this case.

22.     These pioneering innovations, including Samsara's AI-integrated dash cameras, Vehicle and Asset Gateways, and groundbreaking Connected Operations™ cloud platform, have transformed the way in which customers with physical operations in wide-ranging industries can obtain information about their devices, personnel, equipment, and operations.

II.     **Motive Arrived Late to an Industry That Samsara Pioneered**

23.     In 2013, Motive was founded as "KeepTruckin" by Shoaib Makani, Ryan Johns, and Obaid Khan.  KeepTruckin sold an electronic logbook app for truck drivers to record their

hours of service,[3] as well as electronic logging devices ("ELDs") for trucking companies that sought to meet U.S. regulatory mandates around how long truck drivers could work and drive.



**KeepTruckin's First Offering in 2013**

24.    By the beginning of 2018, however, Motive witnessed Samsara's meteoric success and sought to reorient its business completely, pivoting from being a small company with a niche app to one focused on the much larger market of offering systems for connecting physical operations and fleet management—the precise market that Samsara pioneered.

25.    At the same time, Samsara was valued at over $1.4 billion following multiple successful funding rounds, had annual revenue growth well over 200% and hundreds of employees, and was "onboarding thousands of new customers each quarter."[4]   Additionally, Samsara already had launched, in the previous year, the first versions of its proprietary dashcams, multiple iterations of its Vehicle Gateway, and its revolutionary Samsara Dashboard portal to aggregate and grant user access to the information obtained from Samsara's IoT hardware.

---

[3] https://web.archive.org/web/20131213071205/https://keeptruckin.com/.

[4] https://www.samsara.com/blog/enterprise-iot-leader-samsara-raises-50m-to-invest-in-growth.

26.    By December 2020, Samsara was valued at $5.4 billion and was serving more than 20,000 customers.[5]  In 2021, the Financial Times ranked Samsara as the second-fastest-growing company in America.[6]  Samsara went public in December 2021 on the New York Stock Exchange at a valuation of $11.5 billion.

27.    Since 2018, Motive has sought to replicate Samsara's success.  Although Motive's conduct shows it never had any intention to do the hard work of innovation, Motive's pivot into the market that Samsara pioneered has, by some reports, resulted in hundreds of millions of dollars in revenue and a multi-billion-dollar valuation.[7]

## III.    Samsara Makes, Motive Takes

28.    On information and belief, beginning at least with Motive's 2018 entry into the market for connecting physical operations and fleet management, the highest levels of Motive's leadership have devised and directed an intentional scheme to study, reverse-engineer, and replicate virtually every product and service Samsara provides.

29.    On information and belief, the foundation of Motive's business—the purported "Motive Platform"—is built around addressing three key concerns: "Driver Safety," "Fleet Management," and "Equipment Monitoring."[8]  But Motive does not solve these fundamental problems in the industry through its own innovation.  Instead, Motive uses and copies Samsara's patent-protected innovations without Samsara's authorization.

---

[5] https://www.prnewswire.com/news-releases/samsara-reaches-20-000-customers-and-1-million-connected-devices-301195338.html?tc=eml_cleartime.

[6] https://www.prnewswire.com/news-releases/samsara-named-2-on-financial-times-list-of-fastest-growing-companies-in-the-americas-301267963.html.

[7] https://www.tipranks.com/news/google-backed-tech-firm-motive-heads-for-ipo-what-investors-should-know.

[8] Motive Technologies, Inc., Form S-1 at 4 (Dec. 23, 2025), https://www.sec.gov/Archives/edgar/data/1646681/000162828025058773/motive-sx1.htm.

30.     On information and belief, nearly each and every one of Motive's product offerings in these key areas was copied from preexisting Samsara products or services. In practically every instance, Samsara invented a solution in these key areas, launched a product to provide that solution, and then—only after—Motive launched an imitator product that uses Samsara's intellectual property. Motive has employed this business model instead of developing its own unique innovations. In doing so, Motive has knowingly disregarded Samsara's patent protection on the very products it sought to copy.

### A.     Motive Copies Samsara's Patent-Protected Driver Safety Products and Services

31.     Motive touts "Driver Safety" as a key—and indeed the first—"problem[]" the "Motive Platform solves."[9]



---

[9] Motive Technologies, Inc., Form S-1 at 4 (Dec. 23, 2025), https://www.sec.gov/Archives/edgar/data/1646681/000162828025058773/motive-sx1.htm.

32.    Motive's "Driver Safety" solutions are built on Samsara's intellectual property. One of Samsara's first major innovations was a line of internet-connected dash cameras ("dashcams") to flag and instantly upload, for a fleet manager's review, footage of harsh driving events (*e.g.*, harsh turns, accelerations, or stops).  In December 2017, Samsara introduced the Samsara CM22, a groundbreaking internet-connected dashcam with both outward- and inward-facing cameras (shown below).  The dual cameras allowed fleet managers to detect both unsafe driving and traffic patterns on the oncoming road while also monitoring the interior of the vehicle for unsafe driver behavior.



**Samsara's CM22 Dual-Facing Dashcam**

33.    Upon entering the market, the first offering Motive launched was an imitation product—the Smart Dashcam—in June 2018.[10]  Mimicking both the design and functionality of the Samsara dual-facing dashcam, Motive's copy had a road-facing camera and a driver-facing camera.  Motive's copy, however, relied heavily on the assistance of an "[i]n-house safety team"

---

[10] https://gomotive.com/blog/announcing-smart-dashcam/; https://gomotive.com/content-library/spec-sheet/smart-dashcam/.

to detect high-risk events, including harsh driving events, stop sign violations, and passing violations.[11]

| Samsara CM22 Dashcam (released **December 2017**) | Motive Smart Dashcam (released **June 2018**) |
| --- | --- |
|  | |

34.     As Samsara continued to iterate on its dashcam technology, it began investigating the safety benefits that integrating AI into its dashcams could offer.  Samsara's IoT sensors—including those incorporated into its already-existing dashcams—generate and collect millions of hours of dashcam video and trillions of vehicle-related data points, all of which Samsara recognized were ripe for use in AI applications.  To that end, Samsara pioneered the use of AI-integration to instantly detect unsafe driving behaviors or traffic patterns to alert drivers, and was awarded a substantial set of core patents that remain central to Samsara's business to this day.

---

[11] https://gomotive.com/blog/announcing-smart-dashcam/; https://gomotive.com/content-library/spec-sheet/smart-dashcam/.

35.    Based on that research, Samsara developed advanced AI integrations with its dashcams to make transportation safer than ever before.  In February 2019, Samsara introduced the CM32 Dual-Facing AI Dashcam, which leveraged those proprietary and state-of-the-art AI algorithms to automatically detect unsafe driving behaviors.



**CM32 Dual-Facing AI Dashcam**

36.    The CM32 dashcam performs real-time analysis onboard and includes built-in speakers to alert a driver of high-risk behaviors, such as distracted driving or tailgating, to avert accidents before they happen.  Additionally, the CM32 dashcam enables HD footage to be uploaded to the cloud and tagged with behaviors within minutes of an event occurring.



**Samsara's Dashcam Detecting Unsafe Driving Behavior**[12]

---

[12] https://www.samsara.com/products/safety/dash-cam.

37.    Samsara did not stop innovating, however.  In 2021, Samsara developed another breakthrough for driver safety:  AI technology that could integrate with its dashcams to access sensor data and, using an ensemble neural network and a plurality of models, detect hand actions and head poses of drivers, determine the probability of particular events—such as events associated with distracted or unsafe driving—and trigger alerts indicating that such distracted or unsafe driving events had occurred.  Samsara filed for patent protection of this invention in November 2021, which resulted in Samsara being awarded, *inter alia*, the '995 patent.

38.    In August 2021, Motive again copied Samsara and introduced a dual-facing "AI" dashcam, albeit with vastly inferior AI.[13]  That AI dashcam, like the Samsara AI dashcam released years earlier, includes an AI processor and computer vision algorithms intended to detect unsafe driving and alert drivers in real time.[14]

| Samsara CM32 Dual-Facing AI Dashcam (released **February 2019**) | Motive Dual-Facing AI Dashcam (released **August 2021**) |
|---|---|
|  | |

39.    Next, as detailed below (*infra* ¶¶ 87–95) and in Exhibit 6, Motive deployed Samsara's patented invention using Motive's copycat dashcam, including by using an ensemble

---

[13] *See* https://www.businesswire.com/news/home/20210812005612/en/KeepTruckin-Launches-New-AI-Dashcam-Featuring-Industry-Leading-Accuracy-to-Proactively-Prevent-Accidents-Increase-Safety-and-Efficiency.

[14] https://gomotive.com/content-library/spec-sheet/ai-dashcam/.

neural network and a plurality of models to detect hand actions of drivers, head poses of drivers, determine the probability of particular events (*e.g.*, events associated with distracted or unsafe driving), and trigger alerts indicating that such distracted or unsafe driving events had occurred. This deployment infringes at least the '995 patent.

40.     Motive continued to build on Samsara's intellectual property with the launch of the Motive "AI Dashcam Plus," which purportedly includes AI-integration and real-time risk detection:

**Motive AI Dashcam Plus**[15]
(released **January 2026**)



41.     As detailed below (*infra* ¶¶ 87–95) and in Exhibit 6, Motive's deployment of its AI Dashcam Plus continues to infringe at least the '995 patent.

42.     Thus, while Motive touts "Driver Safety" as the key element of its product portfolio, it is clear that Motive's central offerings in that space—*i.e.*, Motive's dashcams for detecting distracted driving and recording and preventing accidents—were based on preexisting Samsara products.  As detailed above, each followed and sought to replicate the functionality of Samsara's innovative dashcams.

---

[15] https://gomotive.com/motive-launches-ai-dashcam-plus-powering-a-new-era-of-edge-ai-safety-for-physical-operations/.

43.     Further, and notwithstanding Motive's naked efforts to copy every dashcam Samsara has ever released, Motive has struggled to replicate effectively the critical element.  That is, although Motive uses AI to detect hand actions of drivers, detect head poses of drivers, determine the probability of particular events—such as events associated with distracted or unsafe driving—and trigger alerts indicating that such distracted or unsafe driving events had occurred, Motive's AI is far less effective than Samsara's at doing so.  As a result, Motive relies on a small army of human reviewers located abroad to look manually at footage of driving behaviors— sometimes hours or days after an event—to flag unsafe driving or harsh driving events.  *See* Exhibit 11.  On information and belief, while these reviewers pay particular attention, for example, to videos Motive administrators have pre-flagged as important, this human review in the ordinary course renders these products less accurate and less effective.  The result is to erode customers' faith in this technology and goodwill in the marketplace.  Thus, although Motive infringes, its inferior infringing products harm Samsara in a manner that cannot be fixed through a simple patent royalty on Motive's infringing products.

## B.     Motive Copies Samsara's Patent-Protected Fleet Management Platform

44.     Motive advertises that the next key "problem[]" purportedly solved by the "Motive Platform" is "Fleet Management."[16]

---

[16] Motive Technologies, Inc., Form S-1 at 4 (Dec. 23, 2025), https://www.sec.gov/Archives/edgar/data/1646681/000162828025058773/motive-sx1.htm.

## The Motive Platform solves a wide range of problems in one integrated system.



45.     Motive's solutions for Fleet Management, however, are rooted firmly in technology Samsara developed and patented.  Samsara's product ecosystem, including its driver safety product offerings, is brought together by its comprehensive cloud-based user interface: the Samsara Dashboard.  The Samsara Dashboard allows users to manage and monitor their fleet, including assets and sensors.  The Samsara Dashboard includes features like Safety Overview that aggregate data from Samsara's IoT sensors, such as dashcams and the Samsara Vehicle Gateway.  The Safety Overview is divided into distinct sections:  a safety actions tab, fleet safety score trends and behavior insights, risk factors providing details for safety events affecting the safety score, driver performance, and driver coaching.  This allows fleet managers to see how their drivers are performing and to identify unsafe driving, incentivize good job performance, and give effective, tailored feedback.  The Safety Overview, paired with footage captured by Samsara's dashcams, helps customers see footage relevant to their drivers' performance and effectively coach drivers on safe driving behavior, resulting in lower operating costs while improving fleet safety.

46.    The Safety Overview functionality of the Samsara Dashboard is again the result of groundbreaking innovation by Samsara.  Specifically, through integration with Samsara's proprietary hardware, Samsara developed a method of aggregating vehicle metric data, such as indications of harsh events, speed, and geographical location, for presentation on an interactive graphical user interface, such as a map indexing potentially unsafe driving behavior—specifically, harsh events, including harsh acceleration, harsh braking, or even a crash—to geographical locations on a driver's route.  This novel approach granted fleet operators unprecedented visibility into why accidents happened, and unprecedented ability to avoid future accidents based on this correlated data.  Samsara filed provisional application No. 63/127,880 on December 18, 2020, and was awarded the '445 patent on this invention.

47.    Motive has sought to replicate virtually every feature available on the Samsara Dashboard—including Samsara's Safety Overview.  Motive's copycat platform, the "Safety Hub," provides identical features:  a "Safety Overview" that includes a "Safety Score" for each driver tracked over a period of time, a listing of "Safety Score Factors" providing insight into risk factors, and a "Safety Events" review page depicting the geographical location of unsafe driving behaviors overlaid on a map.[17] [18]

48.    Here, again, Motive's purported solution to the problem of "Fleet Management" mirrors Samsara's preexisting Samsara Dashboard in virtually every regard.  As detailed below (*infra* ¶¶ 77–85) and in Exhibit 5, this overlap extends to the precise means of aggregation of safety and geographical location information into graphical user interfaces claimed in the '445 patent and thus infringes the patent.

---

[17] https://helpcenter.gomotive.com/hc/en-us/articles/6162472353053-What-is-Safety-Hub.

[18] https://helpcenter.gomotive.com/hc/en-us/articles/6189410468509-Safety-Events-on-the-Fleet-Dashboard.

**C.    Motive Copies Samsara's Patent-Protected Equipment Monitoring Products and Services**

49.    The third major "problem" purportedly solved by the "Motive Platform" is "Equipment Monitoring," which is also facilitated through Motive's fleet management cloud platform.[19]



50.    Here, once again, Motive's purported solution was copied directly from Samsara's products and patented innovations.  In June 2020, Samsara released another innovative product, the Samsara AG26 Asset Tracking IoT Gateway, intended for tracking and monitoring virtually any unmanned mobile asset.  The AG26 provides local or onboard sensors for real-time location and status tracking via Samsara's cloud data platform.

---

[19] Motive Technologies, Inc., Form S-1 at 4 (Dec. 23, 2025), https://www.sec.gov/Archives/edgar/data/1646681/000162828025058773/motive-sx1.htm.



**Samsara's AG26 Asset Gateway[20]**

51.     Samsara expended considerable resources to develop the hardware and cloud infrastructure to support this remote object tracking, including the novel means by which Samsara's gateways uploaded data to and were monitored by Samsara's cloud platform.  Samsara again received comprehensive patent protection for these innovations, including the '940 and '117 patents.

52.     Following the issuance of those patents, Motive released its own "Asset Gateways" which, just like Samsara's, provided real-time location and status tracking of a mobile asset.

---

[20] https://www.samsara.com/pdf/docs/AG26_Datasheet.pdf.





**Motive Asset Gateway Solar**[21]
(released **in or about 2022**)

**Motive Asset Gateway Mini**[22]
(released **in or about 2023**)

53.    By March 2020, however, Samsara had filed for patent protection on the novel devices and systems it had developed that, among other features, received power (from a solar panel or other source), determined their location, collected information from sensors regarding a storage unit, monitored the power level of the device, and offered numerous other features to provide fleet managers detailed insight into the assets tracked within their fleets.  Samsara was awarded the '117 and '940 patents for these inventions.  As detailed below (*infra* ¶¶ 97–115) and in Exhibits 7 and 8, Motive's asset gateways, including Motive Asset Gateway Solar and Asset Gateway Mini infringe the '117 patent, and Motive's Asset Gateway Solar infringes the '940 patent.

54.    In short, Motive itself has identified a handful of key problem areas that its products are intended to address—Driver Safety, Fleet Management, and Equipment Tracking.  But in every instance, Samsara was there first:  Samsara did the research, obtained the patents, launched the products, and established an industry standard which Motive has sought only to emulate from day

---

[21] https://gomotive.com/wp-content/uploads/2024/04/Asset-Gateway-Solar-Spec-Sheet.pdf.

[22] https://gomotive.com/content-library/spec-sheet/asset-gateway-mini/.

one.  The "Motive Platform" is built, from hardware to software and everything in between, on intellectual property developed and owned by Samsara.

## IV.    Motive's Willful Infringement

55.    As shown above, virtually all of Motive's products and services have chased Samsara in lock-step:  Samsara invents, develops, and launches a revolutionary product, and Motive follows with a copycat product.  On information and belief, this pattern is a product of express and continuous direction from Motive's leadership to follow, study, reverse engineer, and use any other means to copy Samsara's products.

56.    In fact, in a related proceeding involving different Samsara patents, an Administrative Law Judge (ALJ) on the United States International Trade Commission found there is "compelling evidence" that it has been "Motive's intent to copy Samsara's products."[23]  The ALJ made detailed findings of the extent of Motive's efforts to copy Samsara's patented innovations:

> But Motive did not simply identify features in Samsara's products that its own products lacked—instead, its employees went much further and embraced a strategy to, ███████  ████████████ Samsara's products. Samsara released a dashcam that could detect rolling stops by February 2019, a dashcam that could detect distracted-driving and tailgating by around June 2020, and a safety score feature in July 2022. *See* Tr. 323:2–21 (Finch). Motive, however, did not release its first dashcam with rolling-stop, distracted-driving, and tailgating detection until August 2021. *See* Tr. 967:21–968:6, 993:4–994:16, and 996:2–4 (Makani).

---

[23] September 8, 2025 Initial Determination, *In the Matter of Certain Vehicle Telematics, Fleet Management, and Video-Based Safety Systems, Devices, and Components Thereof*, Inv. No. 337-TA-1393 at 240–41.

57.     On information and belief, these efforts included investigation of Samsara's patent portfolio, through which Motive learned of each of the Patents-in-Suit.  On information and belief, given Motive's comprehensive efforts to obtain all available information on Samsara's products, Motive reviewed and thus has been aware of Samsara's patent portfolio—including the Patents-in-Suit—in the course of scouring for such information.  Motive's awareness of Samsara's patent portfolio is further evidenced by the fact that Motive has been a party to ITC Investigation No. 337-TA-1393 involving related Samsara patents since March 2024, through which Motive gained detailed knowledge of Samsara's patent portfolio in these technology areas.

58.     In any event, Samsara identified its patents to Motive and demanded that Motive cease infringement of Samsara's intellectual property through Motive's copycat products.  On July 3, 2024, Samsara wrote to notify Motive of Samsara's patent portfolio related to asset gateway products—including family members of the Patents-in-Suit.  *See* Exhibit 9.  Then, on September 16, 2024, Samsara wrote to again seek confirmation that Motive would stop infringing Samsara's patents.  In that letter, Samsara identified patents related to vehicle-based telematics, artificial intelligence, platform technology, asset gateways, and fleet enhancement technologies, including the Patents-in-Suit or family members thereof.  *See* Exhibit 10.

59.     Despite Motive's knowledge of Samsara's patents, Motive has refused to cease infringement.  To the contrary, Motive's pattern of copying Samsara's products demonstrates a reckless and willful disregard for Samsara's patents.

**V.     The Patents-in-Suit**

60.     Samsara's products incorporate numerous patented technologies developed and owned by Samsara, including those discussed above.  Four examples of Samsara's patented technologies are described below.  These patented technologies represent several of the

foundational contributions and innovations by Samsara in fleet telematics and AI-enabled driver safety products.

**U.S. Patent No. 12,140,445**

61.    U.S. Patent No. 12,140,445 (the "'445 patent"), titled "Vehicle Gateway Device and Interactive Map Graphical User Interfaces Associated Therewith," issued on November 12, 2024, to inventors Muhammad Ali Akhtar, Jennifer Julia Zhang, Alvin Wu, Benjamin Chang, Joanne Wang, and Katherine Yeonjune Lee.  A true and correct copy of the '445 patent is attached as Exhibit 1 to this Complaint.

62.    Samsara is the owner and sole assignee of the '445 patent and has the full right to enforce and/or license the '445 patent.

63.    The '445 patent is valid and enforceable.

64.    Exemplary claim 7 of the '445 patent recites:

A system comprising:

[a] a non-transitory computer readable storage medium having program instructions embodied therewith; and

[b] one or more processors configured to execute the program instructions to cause the system to:

[c] receive first vehicle metric data associated with a first vehicle, wherein the first vehicle metric data comprises first harsh event metric data, first speed data, and a first geographical coordinate;

[d] receive second vehicle metric data associated with a second vehicle, wherein the second vehicle metric data comprises second harsh event metric data, second speed data, and a second geographical coordinate;

[e] determine first correlated data based at least on: the first vehicle metric data, the first geographical coordinate, the second vehicle metric data, and the second geographical coordinate, wherein determining the first correlated data comprises creating first combined data from at least: (i) the

first harsh event metric data and the second harsh event metric data, or (ii) the first speed data and the second speed data;

[f] determine second correlated data based at least on: the first vehicle metric data, the first geographical coordinate, the second vehicle metric data, and the second geographical coordinate, wherein determining the second correlated data comprises creating second combined data from at least a different one of: (i) the first harsh event metric data and the second harsh event metric data, or (ii) the first speed data and the second speed data;

[g] cause presentation of the first correlated data in an interactive graphical user interface, wherein the presentation of the first correlated data indicates (i) at least some of the first combined data being associated with a first portion of a geographical map and (ii) one of a harsh event or a speed; and

[h] in response to receiving, via the interactive graphical user interface, user input indicating a metric change selection, dynamically update to cause presentation of the second correlated data in the interactive graphical user interface, wherein the presentation of the second correlated data indicates (i) at least some of the second combined data being associated with a second portion of the geographical map and (ii) a different one of the harsh event or the speed.

**U.S. Patent No. 11,995,546**

65.     U.S. Patent No. 11,995,546 (the "'995 patent"), titled "Ensemble Neural Network State Machine for Detecting Distractions," issued on May 28, 2024, to inventors Sharan Srinivasan, Brian Tuan, John Bicket, Jing Wang, Muhammad Ali Akhtar, Abner Ayala Acevedo, Bruce Kellerman, and Vincent Shieh.  A true and correct copy of the '995 patent is attached as Exhibit 2 to this Complaint.

66.     Samsara is the owner and sole assignee of the '995 patent and has the full right to enforce and/or license the '995 patent.

67.     The '995 patent is valid and enforceable.

68.     Exemplary claim 20 of the '995 patent recites:

A computer-implemented method comprising:

[a] accessing sensor data from one or more sensors associated with a vehicle;

[b] executing an ensemble neural network configured to detect occurrence of an event associated with the vehicle, the ensemble neural network comprising a plurality of models including:

[b.1] a first model configured to detect one or more hand actions of a user of the vehicle based at least in part on a hand of the user identified using the sensor data,

[b.2] a second model configured to detect a head pose of the user based at least in part on a face of the user identified using the sensor data, and

[b.3] a third model configured to predict, based at least in part on the one or more hand actions and the head pose, a probability of the event; and

[c] based at least in part on the probability of the event, triggering an event alert indicative of occurrence of the event.

**U.S. Patent No. 12,000,940**

69.     U.S. Patent No. 12,000,940 (the "'940 patent"), titled "Systems and Methods of Remote Object Tracking," issued on June 4, 2024 to inventors Kevin Russell Coates Lloyd, Neel Sheth, Gautam Ravi Ramaswamy, and James Michael Rowson.  A true and correct copy of the '940 patent is attached as Exhibit 3 to this Complaint.

70.     Samsara is the owner and sole assignee of the '940 patent and has the full right to enforce and/or license the '940 patent.

71.     The '940 patent is valid and enforceable.

72.     Exemplary claim 1 of the '940 patent recites:

A system for tracking information associated with a storage unit, the system comprising:

[a] an object tracking device in communication with one or more sensors and comprising:

[b] a solar power generation device comprising a solar cell;

[c] a power storage device configured to receive, at least in part, power from the solar power generation device;

[d] a location determination device configured to generate location information associated with the object tracking device;

[e] one or more wireless communication interfaces, at least one of the one or more wireless communication interfaces configured to establish wireless communications between the object tracking device and an external server system, and the at least one of the one or more wireless communication interfaces configured to establish wireless communications between the object tracking device and the one or more sensors;

[f] one or more computer readable storage mediums configured to store:

[f.1] configuration information associated with the object tracking device;

[f.2] information associated with the storage unit received from the one or more sensors;

[f.3] location information generated by the location determination device; and

[f.4] program instructions; and

[g] one or more processors configured to execute the program instructions to cause the object tracking device to:

[g.1] implement the configuration information to, at least in part, operate the object tracking device;

[g.2] communicate, via at least one of the wireless communication interfaces, with the one or more sensors;

[g.3] receive the information associated with the storage unit collected by the one or more sensors;

[g.4] store, in at least one of the one or more computer readable storage mediums, the received information associated with the storage unit;

[g.5] monitor a power level of the power storage device; and

[g.6] communicate, via at least one of the wireless communication interfaces, at least some of the location information and the information associated with the storage unit to the external server system.

**U.S. Patent No. 12,117,546**

73.    U.S. Patent No. 12,117,546 (the "'117 patent"), titled "Systems and Methods of Remote Object Tracking," issued on October 15, 2024 to inventors Kevin Russell Coates Lloyd, Neel Sheth, Gautam Ravi Ramaswamy, and James Michael Rowson.  A true and correct copy of the '117 patent is attached as Exhibit 4 to this Complaint.

74.    Samsara is the owner and sole assignee of the '117 patent and has the full right to enforce and/or license the '117 patent.

75.    The '117 patent is valid and enforceable.

76.    Exemplary claim 1 of the '117 patent recites:

A system for tracking information associated with a storage unit, the system comprising:

[a] an object tracking device in communication with one or more sensors and comprising:

[b] a power storage device configured to receive, at least in part, power from one or more power sources;

[c] a location determination device configured to generate location information associated with the object tracking device;

[d] one or more wireless communication interfaces configured to provide wireless communications between (1) the object tracking device and an external server system, and (2) the object tracking device and the one or more sensors;

[e] one or more computer readable storage mediums configured to store:

[e.1] information associated with the storage unit received from the one or more sensors; and

[e.2] location information generated by the location determination device; and

[f] one or more processors configured to execute program instructions to cause the object tracking device to:

[f.1] communicate, via at least one of the one or more wireless communication interfaces, with the one or more sensors;

[f.2] receive the information associated with the storage unit collected by the one or more sensors;

[f.3] monitor a power level of the power storage device; and

[f.4] communicate, via at least one of the one or more wireless communication interfaces, at least some of the location information and the information associated with the storage unit to the external server system.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 12,140,445

77.    Samsara repeats and re-alleges all of the preceding paragraphs as if fully set forth herein.

78.    The USPTO duly and legally issued the '445 patent on November 12, 2024.

79.     Motive has infringed, and continues to infringe, one or more claims of the '445 patent, including at least claim 7, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, making, and/or using in the United States, a system covered by one or more claims of the '445 patent.  The system consists of at least the Motive Cloud Platform Safety Hub.  As shown by illustrative example in the attached claim chart at Exhibit 5, the Motive Cloud Platform Safety Hub meets all limitations of at least claim 7 of the '445 patent.

80.     On information and belief, Motive had knowledge of the '445 patent before the filing of this Complaint.  On September 16, 2024, Samsara identified to Motive patents related to vehicle gateway and platform technology.  The '445 patent issued on November 12, 2024, and its underlying application was published before issuance, providing Motive with constructive notice of the claims.  Additionally, on information and belief, Motive monitors Samsara's patent portfolio as part of its systematic efforts to study and replicate Samsara's products, and thus became aware of the '445 patent upon or shortly after its issuance.  In any event, Motive has had knowledge of the '445 patent at least as of the filing and service of this Complaint.

81.     In addition to directly infringing the '445 patent, Motive has indirectly infringed the '445 patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '445 patent by at least using the infringing Motive Cloud Platform Safety Hub.  Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induce at least its

customers and end users to perform acts intended by Motive to cause direct infringement of the '445 patent.[24]

82.    Motive has also indirectly infringed the '445 patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '445 patent by others, including at least its customers, end users, and service providers that use the Motive Cloud Platform: Safety Hub.  Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Cloud Platform: Safety Hub, and offering the Motive Cloud to its customers for use with the Motive Cloud Platform: Safety Hub, contribute to infringement of the '445 patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '445 patent, and are not staple articles of commerce suitable for substantial non-infringing use.  Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness that the components are specially made or adapted for use in infringing the '445 patent and are not staple articles of commerce suitable for substantial non-infringing use.

83.    On information and belief, Motive is aware of Samsara's patents, and in fact uses the disclosures in Samsara's patents to guide its own product development, creating copycats of Samsara's patented products that Motive knows or reasonably should know infringe Samsara's patents, including the '445 patent.  Motive's pattern of intentionally copying Samsara's patented products and accessing as much information about Samsara's products as it possibly can, including, on information and belief, Samsara's published patent applications and issued patents, is further evidence of Motive's willful infringement.  At least as of the filing of this Complaint,

---

[24] *See, e.g.*, https://helpcenter.gomotive.com/hc/en-us/articles/6162472353053-What-is-Safety-Hub.

Motive's infringement of the '445 patent has been willful and in reckless disregard of the '445 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

84.     Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement.   For example, Motive's freeriding on Samsara's patented technology—offering similar products and solutions without having to invest in technological innovation—has caused and will continue to cause a loss of goodwill in the marketplace, including because Motive infringes Samsara's patents while offering technically inferior products.   Indeed, Motive's resort to using human-based review of footage while marketing an "AI" solution threatens consumer confidence in Samsara's own AI-integrated safety products.   Further, Motive's infringement has caused and will continue to cause price erosion.   For example, Motive's infringement has required Samsara to compete on price with Motive's unauthorized use of Samsara's own patented technology.

85.     Unless enjoined, Motive will continue to infringe the '445 patent.

86.     Due to Motive's infringing acts, Samsara has been and will be damaged in an amount to be determined at trial.

### COUNT II – INFRINGEMENT OF U.S. PATENT NO. 11,995,546

87.     Samsara repeats and re-alleges all of the preceding paragraphs as if fully set forth herein.

88.     The USPTO duly and legally issued the '995 patent on May 28, 2024.

89.     Motive has infringed, and continues to infringe, one or more claims of the '995 patent, including at least claim 20, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, making, and/or using in the United States, a system covered by one or more claims of the '995

patent. The system consists of at least the Motive Dual-Facing AI Dashcam and its supporting software, and the Motive AI Dashcam Plus and its supporting software. As shown by illustrative example in the attached claim chart at Exhibit 6, the Motive Dual-Facing AI Dashcam and its supporting software infrastructure, and the Motive AI Dashcam Plus and its supporting software infrastructure, meet all limitations of at least claim 20 of the '995 patent.

90.    On information and belief, Motive had knowledge of the '995 patent before the filing of this Complaint. On September 16, 2024, Samsara identified to Motive patents related to artificial intelligence technologies. The '995 patent issued on May 28, 2024, and its underlying application was published before issuance, providing Motive with constructive notice of the claims. Additionally, on information and belief, Motive monitors Samsara's patent portfolio as part of its systematic efforts to study and replicate Samsara's products, and thus became aware of the '995 patent upon or shortly after its issuance. In any event, Motive has had knowledge of the '995 patent at least as of the filing and service of this Complaint.

91.    In addition to directly infringing the '995 patent, Motive has indirectly infringed the '995 patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '995 patent by at least using the infringing Motive Dual-Facing AI Dashcam and supporting software infrastructure, and the infringing Motive AI Dashcam Plus and supporting software infrastructure. Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induce at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '995 patent.[25]

---

[25] *See, e.g.*, https://helpcenter.gomotive.com/hc/en-us/articles/611398373661-Installation.

92.    Motive has also indirectly infringed the '995 patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '995 patent by others, including at least its customers, end users, and service providers that use the Motive Dual-Facing AI Dashcam and supporting software infrastructure and Motive AI Dashcam Plus and supporting software infrastructure.  Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Dual-Facing AI Dashcam and Motive AI Dashcam Plus, and offering their supporting software infrastructures to its customers for use with the Motive Dual-Facing AI Dashcam and the Motive AI Dashcam Plus, contribute to infringement of the '995 patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '995 patent, and are not staple articles of commerce suitable for substantial non-infringing use.  Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness that the components are specially made or adapted for use in infringing the '995 patent and are not staple articles of commerce suitable for substantial non-infringing use.

93.    On information and belief, Motive is aware of Samsara's patents, and in fact uses the disclosures in Samsara's patents to guide its own product development, creating copycats of Samsara's patented products that Motive knows or reasonably should know infringe Samsara's patents, including the '995 patent.  Motive's pattern of intentionally copying Samsara's patented products and accessing as much information about Samsara's products as it possibly can, including, on information and belief, Samsara's published patent applications and issued patents, is further evidence of Motive's willful infringement.  At least as of the filing of this Complaint, Motive's infringement of the '995 patent has been willful and in reckless disregard of the '995

patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

94.     Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement.  For example, Motive's freeriding on Samsara's patented technology—offering similar products and solutions without having to invest in technological innovation—has caused and will continue to cause a loss of goodwill in the marketplace, including because Motive infringes Samsara's patents while offering technically inferior products.  Indeed, Motive's resort to using human-based review of footage while marketing an "AI" solution threatens consumer confidence in Samsara's own AI-integrated safety products.  Further, Motive's infringement has caused and will continue to cause price erosion.  For example, Motive's infringement has required Samsara to compete on price with Motive's unauthorized use of Samsara's own patented technology.

95.     Unless enjoined, Motive will continue to infringe the '995 patent.

96.     Due to Motive's infringing acts, Samsara has been and will be damaged in an amount to be determined at trial.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 12,000,940**

97.     Samsara repeats and re-alleges all of the preceding paragraphs as if fully set forth herein.

98.     The USPTO duly and legally issued the '940 patent on June 4, 2024.

99.     Motive has infringed, and continues to infringe, one or more claims of the '940 patent, including at least claim 1, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, making, and/or using in the United States, a system covered by one or more claims of the '940 patent.  The system consists of at least the Motive Asset Gateway Solar and supporting cloud

infrastructure. As shown by illustrative example in the attached claim chart at Exhibit 7, the Motive Asset Gateway Solar and supporting cloud infrastructure meet all limitations of at least claim 1 of the '940 patent.

100. On September 16, 2024, Samsara alerted Motive of its infringement of the '940 patent and requested that it cease infringing Samsara's patented technologies. Motive did not cease its infringing activities. Motive has therefore had knowledge of the '940 patent at least as of September 16, 2024, and, in any event, at least as of the filing and service of this Complaint.

101. In addition to directly infringing the '940 patent, Motive has indirectly infringed the '940 patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '940 patent by at least using the infringing Motive Asset Gateway Solar and supporting cloud infrastructure. Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induce at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '940 patent.[26]

102. Motive has also indirectly infringed the '940 patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '940 patent by others, including at least its customers, end users, and service providers that use the Motive Asset Gateway Solar and supporting cloud infrastructure. Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Asset Gateway Solar, and offering its supporting cloud infrastructure to its customers for use with the Motive Asset Gateway Solar, contribute to

---

[26] *See, e.g.*, https://helpcenter.gomotive.com/hc/en-us/articles/6162290919837-Installation-Asset-Gateway-Solar.

infringement of the '940 patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '940 patent, and are not staple articles of commerce suitable for substantial non-infringing use.  Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness that the components are specially made or adapted for use in infringing the '940 patent and are not staple articles of commerce suitable for substantial non-infringing use.

103.    On information and belief, Motive is aware of Samsara's patents, and in fact uses the disclosures in Samsara's patents to guide its own product development, creating copycats of Samsara's patented products that Motive knows or reasonably should know infringe Samsara's patents, including the '940 patent.  Motive's pattern of intentionally copying Samsara's patented products and accessing as much information about Samsara's products as it possibly can, including, on information and belief, Samsara's published patent applications and issued patents, is further evidence of Motive's willful infringement.  Additionally, at least based on the notices that Samsara provided to Motive before filing this Complaint, Motive's infringement of the '940 patent has been willful and in reckless disregard of the '940 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

104.    Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement.  For example, Motive's freeriding on Samsara's patented technology—offering similar products and solutions without having to invest in technological innovation—has caused and will continue to cause a loss of goodwill in the marketplace, including because Motive infringes Samsara's patents while offering technically inferior products.  Indeed, Motive's resort to using human-based review of footage while marketing an "AI" solution threatens consumer confidence in Samsara's own AI-integrated safety products.  Further, Motive's

infringement has caused and will continue to cause price erosion.  For example, Motive's infringement has required Samsara to compete on price with Motive's unauthorized use of Samsara's own patented technology.

105.    Unless enjoined, Motive will continue to infringe the '940 patent.

106.    Due to Motive's infringing acts, Samsara has been and will be damaged in an amount to be determined at trial.

**COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 12,117,546**

107.    Samsara repeats and re-alleges all of the preceding paragraphs as if fully set forth herein.

108.    The USPTO duly and legally issued the '117 patent on October 15, 2024.

109.    Motive has infringed, and continues to infringe, one or more claims of the '117 patent, including at least claim 1, either literally or under the doctrine of equivalents, at least by importing into the United States, offering for sale in the United States, selling in the United States, making, and/or using in the United States, a system covered by one or more claims of the '117 patent.  The system consists of at least the Motive Asset Gateway Solar (including in wired configuration) and supporting cloud infrastructure, and the Motive Asset Gateway Mini and supporting cloud infrastructure.  As shown by illustrative example in the attached claim chart at Exhibit 8, the Motive Asset Gateway Solar (including in wired configuration) and supporting cloud infrastructure, and the Motive Asset Gateway Mini and supporting cloud infrastructure, meet all limitations of at least claim 1 of the '117 patent.

110.    On September 16, 2024, Samsara alerted Motive of its infringement of the '117 patent and requested that it cease infringing Samsara's patented technologies.  Motive did not cease its infringing activities.  Motive has therefore had knowledge of the '117 patent at least as of September 16, 2024, and, in any event, at least as of the filing and service of this Complaint.

111.    In addition to directly infringing the '117 patent, Motive has indirectly infringed the '117 patent as provided by 35 U.S.C. § 271(b), and continues to do so, by actively inducing others, including at least its customers and end users, to infringe one or more claims of the '117 patent by at least using the infringing Motive Asset Gateway Solar (including in wired configuration) and supporting cloud infrastructure and/or the Motive Asset Gateway Mini and supporting cloud infrastructure.  Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induce at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '117 patent.[27]

112.    Motive has also indirectly infringed the '117 patent as provided by 35 U.S.C. § 271(c) and continues to do so by contributing to infringement of the '117 patent by others, including at least its customers, end users, and service providers that use the Motive Asset Gateway Solar (including in wired configuration) and supporting cloud infrastructure and/or the Motive Asset Gateway Mini and supporting cloud infrastructure.  Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Asset Gateway Solar and the Motive Asset Gateway Mini, and offering their supporting cloud infrastructures to its customers for use with the Motive Asset Gateway Solar and the Motive Asset Gateway Mini, contribute to infringement of the '117 patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '117 patent, and are not staple articles of commerce suitable for substantial non-infringing use.  Motive contributed to the infringement of others, including at least its customers and end users, with knowledge or at least willful blindness

---

[27] *See, e.g.*, https://helpcenter.gomotive.com/hc/en-us/articles/6162290919837-Installation-Asset-Gateway-Solar.

that the components are specially made or adapted for use in infringing the '117 patent and are not staple articles of commerce suitable for substantial non-infringing use.

113. On information and belief, Motive is aware of Samsara's patents, and in fact uses the disclosures in Samsara's patents to guide its own product development, creating copycats of Samsara's patented products that Motive knows or reasonably should know infringe Samsara's patents, including the '117 patent. Motive's pattern of intentionally copying Samsara's patented products and accessing as much information about Samsara's products as it possibly can, including, on information and belief, Samsara's published patent applications and issued patents, is further evidence of Motive's willful infringement. Additionally, at least based on the notices that Samsara provided to Motive before filing this Complaint, Motive's infringement of the '117 patent has been willful and in reckless disregard of the '117 patent, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

114. Samsara has been and will continue to be irreparably harmed and damaged by Motive's acts of infringement. For example, Motive's freeriding on Samsara's patented technology—offering similar products and solutions without having to invest in technological innovation—has caused and will continue to cause a loss of goodwill in the marketplace, including because Motive infringes Samsara's patents while offering technically inferior products. Indeed, Motive's resort to using human-based review of footage while marketing an "AI" solution threatens consumer confidence in Samsara's own AI-integrated safety products. Further, Motive's infringement has caused and will continue to cause price erosion. For example, Motive's infringement has required Samsara to compete on price with Motive's unauthorized use of Samsara's own patented technology.

115. Unless enjoined, Motive will continue to infringe the '117 patent.

116.    Due to Motive's infringing acts, Samsara has been and will be damaged in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

117.    Samsara hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Samsara respectfully requests that this Court enter judgment in its favor as follows:

A.    Judgment be entered that Motive has infringed one or more claims of each of the Patents-in-Suit, literally and under the doctrine of equivalents;

B.    Pursuant to 35 U.S.C. § 283, Motive and all of its affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, be permanently enjoined from: (1) infringing the Patents-in-Suit; and (2) making, using, selling, and offering for sale, or importing into the United States, the infringing Motive products;

C.    Samsara be awarded damages sufficient to compensate Samsara for Motive's infringement of the Patents-in-Suit under 35 U.S.C. § 284;

D.    The case be found exceptional under 35 U.S.C. § 285 and that Samsara be awarded its reasonable attorneys' fees;

E.    Samsara be awarded its costs and expenses in this action;

F.    Samsara be awarded pre-judgment and post-judgment interest; and

G.    Samsara be awarded further relief as the Court may deem just and proper.

Dated: June 8, 2026                    GIBSON, DUNN & CRUTCHER LLP


By: */s/ Brian A. Rosenthal*
Josh A. Krevitt (*pro hac vice forthcoming)*
Jkrevitt@gibsondunn.com
Brian A. Rosenthal
brosenthal@gibsondunn.com
Katherine Q. Dominguez
kdominguez@gibsondunn.com
Allen Kathir (*pro hac vice forthcoming*)
akathir@gibsondunn.com
Charlie Sim (*pro hac vice forthcoming*)
csim@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York City, NY 10166-0193
(212) 351-4000

Jaysen S. Chung (*pro hac vice forthcoming*)
jschung@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
(415) 393-3800

Nathaniel R. Scharn  (*pro hac vice forthcoming*)
nscharn@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
3161 Michelson Drive
Irvine, CA 92612-4412
(949) 451-3800

*Attorneys for Plaintiff Samsara Inc.*

- 41 -