**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| SAMSARA INC.,<br>*Plaintiff*,<br>v.<br>MOTIVE TECHNOLOGIES, INC.,<br>*Defendant*. | Civil Action No. 7:26-cv-00225-DC |

**DEFENDANT MOTIVE TECHNOLOGIES, INC.'S OPPOSED PARTIAL MOTION TO DISMISS PLAINTIFF SAMSARA INC.'S COMPLAINT**

**TABLE OF CONTENTS**


I. INTRODUCTION .................... 1

II. LEGAL STANDARD .................... 2

III. ARGUMENT .................... 4

A. Samsara's Complaint Fails to State a Claim for Pre-Suit Induced, Contributory, or Willful Infringement of the '995, '117, and '445 Patents .................... 4

1. Samsara's Letters Do Not Mention the '995, '117, and '445 Patents .................... 4

2. Samsara's Remaining Theories Do Not Plausibly Establish Motive's Knowledge of the '995, '117, or '445 Patent .................... 6

B. Samsara's Pre-Suit Induced and Willful Infringement Claims Fail Because Samsara Does Not Plausibly Plead Knowledge of Alleged Infringement .................... 8

C. Samsara's Induced Infringement Claims as to All Four Patents Fail Because Samsara Does Not Plausibly Allege Specific Intent to Cause Infringement .................... 10

D. Samsara's Complaint Fails to Plausibly Allege Contributory Infringement .................... 13

1. Samsara Does Not Plausibly Allege That the Accused Products Lack Substantial Noninfringing Uses .................... 13

2. Samsara Does Not Plausibly Allege That the Accused Products Constitute a Material Part of the Invention .................... 16

3. Samsara Does Not Plausibly Allege That the Accused Products Are Especially Made or Adapted for Infringing Use .................... 17

IV. CONCLUSION .................... 17

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
620 F. App'x 934 (Fed. Cir. 2015) ....................12

*AlmondNet, Inc. v. Snap, Inc.*,
No. 7:25-CV-00181-DC-DTG, 2026 WL 1506197 (W.D. Tex. May 11, 2026)....................3, 4, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................... *passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................2

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)....................16

*BillJCo, LLC v. Apple Inc.*,
583 F. Supp. 3d 769 (W.D. Tex. 2022)....................10

*Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*,
998 F.3d 1320 (Fed. Cir. 2021).................... *passim*

*Certain Vehicle Telematics, Fleet Mgm't, & Video-Based Safety Sys., Devices, & Components Thereof*,
Inv. No. 337-TA-1393, 2025 WL 4078800 (Sept. 8, 2025) ....................9

*Dialect, LLC v. Bank of Am., N.A.*,
No. 2:24-CV-00207-JRG, 2024 WL 4980794 (E.D. Tex. Dec. 4, 2024) ....................7

*Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc.*,
No. 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018) ....................11

*Gargoyles, Inc. v. United States*,
6 F.3d 787 (Fed. Cir. 1993) ....................9

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)....................8, 10

*HZNP Medicines LLC v. Actavis Lab'ys UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019)....................11

*Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*,
No. 6:20-CV-00318-ADA, 2021 WL 4555802 (W.D. Tex. Oct. 4, 2021)....................3, 5, 7

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
No. 1:18-CV-00309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)....................3, 6, 7

*Mod. Font Applications LLC v. Red Lobster Hosp. LLC*,
No. 6:21-CV-00470-ADA, 2022 WL 22873253 (W.D. Tex. Jan. 28, 2022) ......................4, 17

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
No. 6:20-CV-00876-ADA-DTG, 2021 WL 3931910
(W.D. Tex. Sept. 1, 2021) ..........................................................................................10

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
355 F.3d 370 (5th Cir. 2004) ..........................................................................................6

*State Indus., Inc. v. A.O. Smith Corp.*,
751 F.2d 1226 (Fed. Cir. 1985)..........................................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)..........................................................................................6, 14

**Statutes**

35 U.S.C. § 271(c) ..........................................................................................4, 13, 16, 17

**Other Authorities**

Rule 12(b)(6)..........................................................................................6, 14

# I. INTRODUCTION

Samsara's Complaint does not plausibly allege facts supporting its claims for pre-suit willful infringement for three of the four Asserted Patents, nor does its Complaint plausibly allege facts establishing pre-suit or post-suit induced or contributory infringement for any Asserted Patent. Motive therefore respectfully requests that the Court dismiss those claims as to all four Asserted Patents.[1]

First, Samsara's pre-suit induced and willful infringement claims as to the '995, '117, and '445 patents fail because the Complaint does not plausibly allege that Motive knew of those patents before this case. Samsara's Complaint attaches two pre-suit letters, neither of which mentions the '995, '117, or '445 patents. Indeed, the '117 and '445 patents did not even exist at the time of those letters, and Samsara failed to mention the '995 patent in its letters. Samsara's remaining pre-suit knowledge allegations rely on constructive notice, purported portfolio monitoring, and an ITC investigation involving different patents—none of which plausibly establishes knowledge of the Asserted Patents.

Second, Samsara's pre-suit induced and willful infringement claims as to all Asserted Patents also fail for an independent reason: the Complaint does not plausibly allege that Motive knew or should have known its conduct infringed any Asserted Patent. Samsara asserts that Motive created "copycat" products, without connecting that alleged copying to any limitation of any asserted patent claim, let alone knowledge of any infringement. These threadbare allegations fail to plausibly suggest the knowledge of alleged infringement sufficient for inducement or willfulness claims.

[1] Samsara's Complaint alleges infringement of four patents: U.S. Patent Nos. 11,995,546 (the "'995 patent"), 12,000,940 (the "'940 patent"), 12,117,546 (the "'117 patent"), and 12,140,445 (the "'445 patent") (collectively, the "Asserted Patents"). Dkt. 1 (Compl.) ¶ 7.

Third, the Court should dismiss Samsara's claims for alleged induced infringement—both pre-suit and post-suit—because the Complaint does not assert facts that plausibly suggest Motive specifically intends to encourage infringement. Samsara cites generally to Motive web pages, but Samsara does not explain how those materials allegedly encourage others to practice any element of any asserted patent claim.

Fourth, and finally, Samsara's contributory infringement allegations are conclusory and fail to allege facts that plausibly suggest contributory infringement. Samsara repeats boilerplate allegations that Motive's accused products constitute a material part of the patented inventions, are especially made or adapted for infringement, and lack substantial noninfringing uses. But Samsara pleads no facts supporting those assertions. Instead, materials Samsara incorporates into its Complaint contradict those conclusory allegations, demonstrating uses of the accused products unrelated to the claimed inventions. Thus, because Samsara's allegations do not cross the line from conceivable to plausible, the Court should dismiss the contributory infringement claims.

Counsel for the parties conferred by teleconference on August 20, 2026, regarding the subject of this motion in a good-faith attempt to resolve the matter by agreement, and the parties could not reach agreement, with Samsara indicating that it opposes this motion.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A claim that has "not nudged" across "the line from conceivable to plausible" must be dismissed. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To state a claim for indirect (either induced or contributory)[2] infringement or willful patent infringement, a complaint must plausibly allege that the defendant had knowledge of the asserted patents. *See, e.g.*, *AlmondNet, Inc. v. Snap, Inc.,* No. 7:25-CV-00181-DC-DTG, 2026 WL 1506197, at *5 (W.D. Tex. May 11, 2026). "The knowledge element requires that the accused infringer had actual knowledge or was willfully blind to the existence of the patents-in-suit." *AlmondNet*, 2026 WL 1506197, at *2 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). Constructive knowledge is insufficient. *Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 1:18-CV-00309-LY, 2018 WL 8261315, at *2 (W.D. Tex. Nov. 30, 2018). "[G]eneral knowledge of a patent portfolio without more is insufficient even to plausibly allege knowledge of a particular asserted patent." *Kirsch Rsch. & Dev., LLC v. Tarco Specialty Prods., Inc.*, No. 6:20-CV-00318-ADA, 2021 WL 4555802, at *2 (W.D. Tex. Oct. 4, 2021) (internal marks and citations omitted). Because "the patent must exist and one must have knowledge of it," a defendant cannot know of a patent before it issues. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

To state a claim for induced infringement, a plaintiff must plausibly allege (1) an act of direct infringement by a third party; (2) the defendant knew of the patent; (3) the defendant knew or should have known that the induced act constituted infringement of that patent; and (4) the defendant possessed the specific intent to encourage that infringement. *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021).

To state a contributory-infringement claim, a plaintiff must plausibly allege (1) an underlying act of direct infringement; (2) the defendant offered to sell, sold, or imported a

---

[2] "Indirect infringement encompasses both induced infringement and contributory infringement." *AlmondNet*, 2026 WL 1506197, at *5.

component or material constituting a material part of the invention; (3) the defendant knew of the patent; (4) the defendant knew the component or material was especially made or especially adapted for use in infringing the patent; and (5) the component or material is not a staple article or commodity of commerce suitable for substantial noninfringing use. *Bio-Rad*, 998 F.3d at 1335; 35 U.S.C. § 271(c); *Mod. Font Applications LLC v. Red Lobster Hosp. LLC*, No. 6:21-CV-00470-ADA, 2022 WL 22873253, at *3-4 (W.D. Tex. Jan. 28, 2022) ("The Court finds that in pleading contributory infringement, the plaintiff must also allege that the defendant's accused product is material to practicing the claimed invention.").

## III. ARGUMENT

### A. Samsara's Complaint Fails to State a Claim for Pre-Suit Induced, Contributory, or Willful Infringement of the '995, '117, and '445 Patents

Knowledge of the asserted patent is a threshold requirement for induced, contributory, and willful infringement. *Bio-Rad*, 998 F.3d at 1335; *AlmondNet*, 2026 WL 1506197, at *2. Samsara offers four theories for Motive's alleged pre-suit knowledge of the '995, '117, and '445 patents: (1) Samsara's two pre-suit letters; (2) constructive notice from published patent applications; (3) Motive's alleged monitoring of Samsara's patent portfolio; and (4) Motive's participation in a U.S. International Trade Commission ("ITC") investigation involving different Samsara patents. *See* Dkt. 1 (Compl.) ¶¶ 55-58, 80, 83, 90, 93, 110, 113. None plausibly establishes knowledge of the three patents. The letters do not identify any of them, and the '117 and '445 patents had not even issued when the letters were sent. Samsara's remaining theories are legally insufficient to establish actual knowledge or willful blindness.

#### 1. Samsara's Letters Do Not Mention the '995, '117, and '445 Patents

The Complaint's reference to two pre-suit letters from Samsara to Motive does not plausibly suggest Motive had pre-suit knowledge of the '995, '117, and '445 patents. Dkt. 1

(Compl.) ¶ 58. The first letter identifies six patents by number, none of which are asserted in this case. Dkt. 1-9 (Compl., Ex. 9). The second letter identifies seventeen patents by number, but of the four Asserted Patents only the ’940 patent appears in that letter. Neither letter mentions the ’995, ’117, or ’445 patents. *See* Dkt. 1-9; Dkt. 1-10. Indeed, the ’117 and ’445 patents did not yet even exist by the dates of those letters. *Compare* Dkt. 1-9 (dated July 3, 2024) *and* Dkt. 1-10 (dated Sept. 16, 2024), *with* Dkt. 1-1 (’445 patent, showing Nov. 12, 2024 issue date) *and* Dkt. 1-4 (’117 patent, showing Oct. 15, 2024 issue date). And, while the ’995 patent had issued by the date of the second letter, Samsara pointedly chose to omit the ’995 patent—despite specifically identifying seventeen other Samsara patents by number in that letter. *See* Dkt. 1-10.

The Complaint does not bridge this gap. Samsara alleges that it “identified to Motive patents related to artificial intelligence technologies” in the September 16 letter. Dkt. 1 (Compl.) ¶ 90. But it does not allege that Samsara identified the ’995, ’117, or ’445 patents. *See id*. Knowledge of patents within a general technology area is not knowledge of a particular unmentioned patent. *See Kirsch*, 2021 WL 4555802, at *2 (“[G]eneral knowledge of a patent portfolio without more is insufficient even to plausibly allege knowledge of a particular asserted patent.”) (internal marks and citations omitted).

Samsara also alleges implausibly that, “[o]n September 16, 2024, Samsara alerted Motive of its infringement of the ’117 patent” and that “Motive has therefore had knowledge of the ’117 patent at least as of September 16, 2024.” Dkt. 1 (Compl.) ¶ 110. But the ’117 patent did not issue until October 15, 2024, nearly a month later. Dkt. 1-4 (’117 Pat.). Samsara could not have alerted Motive to infringement of, or provided Motive knowledge of, a patent that did not yet exist. The September 16 letter, which Samsara attached to and incorporated into the Complaint, likewise confirms the impossibility of that allegation. *See* Dkt. 1 (Compl.) ¶ 58; Dkt. 1-10 (Compl., Ex. 10).

On a Rule 12(b)(6) motion, the Court may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). When an incorporated document contradicts an allegation, the document controls. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) ("If such an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls."). The letter does not mention the '117 patent and predates its issuance. Dkt. 1-10 (Sept. 16, 2024 Ltr.). It therefore refutes, rather than supports, Samsara's allegation that the letter provided Motive knowledge of the '117 patent.

The letters therefore cannot plausibly establish that Motive knew of the '995, '117, and '445 patents.

**2. Samsara's Remaining Theories Do Not Plausibly Establish Motive's Knowledge of the '995, '117, or '445 Patent**

Samsara's remaining theories of pre-suit knowledge fare no better. Constructive notice, generalized portfolio monitoring, participation in an ITC investigation involving different patents, and vague reliance on supposed willful blindness do not plausibly establish that Motive knew of the '995, '117, or '445 patent before suit.

***First***, constructive notice from a published application cannot supply the required knowledge of an issued patent. Samsara alleges that the applications leading to the '995 and '445 patents were "published before issuance, providing Motive with constructive notice of the claims." Dkt. 1 (Compl.) ¶¶ 80, 90. But the knowledge element required to establish indirect or willful infringement is "actual knowledge of or willful blindness to the infringed patent's existence;" constructive knowledge is insufficient. *Meetrix*, 2018 WL 8261315, at *2. Nor is notice of a published application notice of the patent that later issues from it. *Id*. A patent's claims, not its specification, provide notice, and the scope of claims that may ultimately issue from an application

is "totally unforeseeable." *Id*. The same reasoning forecloses reliance on the '117 patent's lineage. Although the '117 patent is a continuation that shares a specification with the '940 patent, knowledge of that specification is not knowledge of the distinct claims that later issued as the '117 patent. *See Meetrix*, 2018 WL 8261315, at *2; Dkt. 1-4 ('117 Pat.).

***Second***, alleged monitoring of Samsara's patent portfolio does not establish knowledge of any particular patent. Samsara alleges that Motive "monitors Samsara's patent portfolio" and "became aware" of the patents "upon or shortly after" their issuance. Dkt. 1 (Compl.) ¶¶ 80, 90; *see also id*. ¶¶ 55-57. Samsara pleads no facts showing that Motive actually identified, reviewed, or otherwise became aware of the '995, '117, or '445 patent before suit. Its assertion "on information and belief" that Motive learned of each patent upon or shortly after issuance is mere speculation, not a well-pleaded factual allegation. *See Iqbal*, 556 U.S. at 678. "[G]eneral knowledge of a patent portfolio without more is insufficient even to plausibly allege knowledge of a particular asserted patent." *Kirsch*, 2021 WL 4555802, at *2 (internal marks and citations omitted); *see also Dialect, LLC v. Bank of Am., N.A.*, No. 2:24-CV-00207-JRG, 2024 WL 4980794, at *3 (E.D. Tex. Dec. 4, 2024) ("[G]eneral knowledge of the asserted patents' prior owner's patent portfolio is insufficient to plausibl[y] allege pre-suit knowledge of the asserted patents.").

***Third***, Motive's and Samsara's prior litigation in the ITC does not establish Motive knew of the Asserted Patents in this case. *See* Dkt. 1 (Compl.) ¶¶ 56-57. By Samsara's own admission, that investigation involved "different" or "related" Samsara patents, not the '995, '117, or '445 patent. *Id*. Litigation of other patents in Samsara's portfolio cannot establish knowledge of a particular unasserted patent. *See Kirsch*, 2021 WL 4555802, at *2.

***Fourth***, Samsara does not plausibly allege willful blindness to the existence of the '995,

’117, or ’445 patent. Willful blindness requires a subjective belief that there is a high probability that the relevant fact exists and deliberate action to avoid learning that fact. *Global-Tech*, 563 U.S. at 769. Yet Samsara alleges neither. Its only express willful-blindness allegations appear in the contributory-infringement counts and assert that Motive was willfully blind “that the components are specially made or adapted for use in infringing the [’445/’995/’117] patent and are not staple articles of commerce suitable for substantial non-infringing use.” Dkt. 1 (Compl.) ¶¶ 82, 92, 112. Those allegations concern whether Motive knew of the components’ allegedly infringing characteristics, not whether Motive was aware of, or deliberately avoided learning about, the patents themselves.

Samsara thus does not plausibly allege that Motive knew of the ’995, ’117, or ’445 patent before suit. Consequently, the Court should dismiss Samsara’s pre-suit induced, contributory, and willful infringement claims as to those patents.

### B. Samsara’s Pre-Suit Induced and Willful Infringement Claims Fail Because Samsara Does Not Plausibly Plead Knowledge of Alleged Infringement

Samsara’s pre-suit induced and willful infringement claims as to all the Asserted Patents fail for an additional, independent reason: the Complaint does not plausibly allege that Motive knew its conduct infringed that patent. Induced infringement requires that the defendant “knew or should have known that the induced acts constituted infringement.” *Bio-Rad*, 998 F.3d at 1335 (internal marks and citations omitted). Willful infringement likewise requires that the defendant “knew or should have known that its conduct amounted to infringement of the patent.” *AlmondNet*, 2026 WL 1506197, at *2. Knowledge of the patent and knowledge of infringement are distinct requirements. Samsara plausibly alleges the latter for none of the four Asserted Patents.

For each Asserted Patent, Samsara pleads knowledge of infringement through the same conclusory sentence, changing only the patent number:

> [O]n information and belief, Motive is aware of Samsara's patents, and in fact uses the disclosures in Samsara's patents to guide its own product development, creating copycats of Samsara's patented products ***that Motive knows or reasonably should know infringe Samsara's patents***, including the '445 patent.

Dkt. 1 (Compl.) ¶ 83 (emphasis added); *see also id*. ¶¶ 93 (as to '995 patent), 103 (as to '940 patent), 113 (as to '117 patent). That allegation merely parrots the conclusion Samsara must plausibly support: that Motive knew or reasonably should have known the use of its products infringe the Asserted Patents. Samsara identifies no feature of any accused product that Motive allegedly knew satisfied any limitation of any asserted patent claim. It likewise pleads no facts explaining how Motive supposedly acquired that knowledge. Such a "[t]hreadbare recital[]" of a required element, "supported by mere conclusory statements," does not suffice. *Iqbal*, 556 U.S. at 678.

Samsara's unsupported allegation that Motive created "copycats" does not fill the factual gap. Patent infringement turns on the patent's claims, not whether two products are similar. *See Gargoyles, Inc. v. United States*, 6 F.3d 787 (Fed. Cir. 1993) (explaining "[i]nfringement is determined, however, by comparing the accused device with the patent claims, not the patentee's commercial embodiment"). Yet Samsara alleges no facts connecting Motive's supposed copying to any Asserted Patent in this case. Even Samsara's tangential allegations about an ITC investigation involving different patents than this case contradict Samsara's suggestion that Motive has ever copied any patented invention. Dkt. 1 (Compl. ¶ 56). The ALJ's Final Initial Determination in that ITC case, which Samsara incorporates into its Complaint (*id.*), expressly held that Samsara failed to prove copying of any patented invention, *e.g.*, "Motive's products are not, in fact, copies of the claimed invention[.]" *Certain Vehicle Telematics, Fleet Mgm't, & Video-Based Safety Sys., Devices, & Components Thereof*, Inv. No. 337-TA-1393, 2025 WL 4078800, at *149 (Sept. 8, 2025) (reviewed in part, affirming finding of no violation); *see also id.* *149-

*151 (finding no nexus between alleged copying and any patented invention). Therefore, Samsara's generalized copying allegation does not plausibly establish that Motive knew its conduct infringed any Asserted Patent.

The '940 patent illustrates the deficiency. Samsara's September 16 letter identified the '940 patent by number, but it identified no claim, accused feature, or alleged mapping between a Motive product and a claim or limitation. Dkt. 1-10 (Sept. 16, 2024 Ltr.). The letter stated only that the listed patents "would be relevant to at least Motive's Asset Gateways" and asked Motive to "confirm that Motive's products have not infringed" them. *Id.* Describing a patent as potentially "relevant" and asking for confirmation of noninfringement does not plausibly allege that Motive knew its conduct infringed. "Mere knowledge of the Asserted Patents is not enough." *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 777-78 (W.D. Tex. 2022) (dismissing pre-suit willfulness and indirect infringement claims); *see also Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20-CV-00876-ADA-DTG, 2021 WL 3931910, at *5 (W.D. Tex. Sept. 1, 2021) (recognizing knowledge of the patent and knowledge of infringement as "distinct elements").

Because Samsara does not plausibly allege that Motive knew its conduct infringed any Asserted Patent before suit, its pre-suit induced and willful infringement claims should be dismissed as to all four Asserted Patents.

### C. Samsara's Induced Infringement Claims as to All Four Patents Fail Because Samsara Does Not Plausibly Allege Specific Intent to Cause Infringement

Samsara's induced infringement claims—pre-suit and post-suit—fail to state a claim for yet another reason: the Complaint does not plausibly allege that Motive specifically intends to cause infringement. The Supreme Court has held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances,*

*Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). That is, induced infringement requires that "the defendant possessed the specific intent to encourage another's infringement." *Bio-Rad*, 998 F.3d at 1335 (internal marks and citations omitted). Specific intent requires "active steps taken to encourage direct infringement; mere knowledge about a product's characteristics or that it may be put to infringing uses is not enough." *HZNP Medicines LLC v. Actavis Lab'ys UT, Inc.*, 940 F.3d 680, 701 (Fed. Cir. 2019).

Where product instructions are the alleged acts of inducement, the question is whether they "teach an infringing use of the device such that [the court is] willing to infer from those instructions an affirmative intent to infringe the patent." *Id*. Generic references to product materials do not meet that standard. *See Dodots Licensing Sols. LLC v. Lenovo Holding Co., Inc*., No. 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (dismissing induced infringement where the plaintiff "cites Defendants' website as support for its allegation" but "does so generically and does not identify any particular statement or material that plausibly suggests Defendants intend to induce infringement"). Samsara's Complaint does not map any Motive product instructions to any claim limitation, and it thus pleads no facts supporting the inference that Motive specifically intends to encourage another's infringement.

Instead, Samsara repeats substantially the same conclusory allegation for each Asserted Patent, changing only the patent number and accused product:

> Motive's affirmative acts of providing, *inter alia*, instructions, manuals, technical assistance, training guides, promotional materials, sales and marketing materials, and/or demonstrations induce at least its customers and end users to perform acts intended by Motive to cause direct infringement of the '445 patent.

Dkt. 1 (Compl.) ¶ 81, *see also id*. ¶¶ 91 ('995 Pat.), 101 ('940 Pat.), 111 ('117 Pat.). That allegation merely restates the specific-intent element without supplying facts that make it plausible. *See Iqbal*, 556 U.S. at 678. The Complaint identifies no particular instruction, statement, or other

content through which Motive allegedly encouraged a customer to perform an infringing act. Nor does it explain how any identified material directs or encourages a customer to practice any limitation of an asserted claim.

The citations accompanying these allegations do not cure that deficiency. For each Asserted Patent, Samsara cites only a Motive Help Center article: “Safety Hub” for the ’445 patent; “AI Dashcam Installation” for the ’995 patent; and “Installation: Asset Gateway Solar” for the ’940 and ’117 patents. Dkt. 1 (Compl.) nn. 24-27; *see also* Ex. A (“Safety Hub”), Ex. B (“AI Dashcam Installation”), Ex. C (“Installation: Asset Gateway Solar”). But the Complaint neither quotes any instruction from those articles nor explains how any article teaches an infringing use. A citation to a product-support article, without facts connecting its contents to an asserted patent claim, does not plausibly establish that Motive affirmatively intended to cause infringement.

The ’995 patent illustrates the deficiency. Samsara cites an article titled “AI Dashcam Installation” but does not identify any instruction in that article concerning the “ensemble neural network” method recited in asserted claim 20, much less an instruction encouraging customers to practice that method. *See* Dkt. 1 (Compl.) ¶ 91, n. 25. The article’s title alone does not permit a plausible inference that Motive specifically intended its customers to infringe the ’995 patent. Samsara’s assertion that Motive acted with that intent is therefore a bare legal conclusion, not a well-pleaded factual allegation. *See Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App’x 934, 938 (Fed. Cir. 2015) (affirming district court’s rejection of an inducement claim where the complaint “simply recite[d] the legal conclusion that Defendants acted with specific intent”).

Because Samsara does not plausibly allege that Motive specifically intended to cause infringement of any Asserted Patent, its induced-infringement claims should be dismissed as to all four Asserted Patents.

### D. Samsara's Complaint Fails to Plausibly Allege Contributory Infringement

Samsara's contributory infringement claims also fail to state a claim because the Complaint does not plausibly allege the requirements of 35 U.S.C. § 271(c). To contributorily infringe, an accused component or product thereof must constitute "a material part of the invention," be "especially made or especially adapted for use in an infringement," and not be "a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c); *Bio-Rad*, 998 F.3d at 1335. Samsara pleads none of these requirements with supporting facts.

Instead, Samsara repeats substantially the same allegation for each Asserted Patent, changing only the patent number and accused product. For example, as to the '445 patent, Samsara alleges:

> Motive's affirmative acts of making, selling, offering for sale, and/or importing the Motive Cloud Platform: Safety Hub, and offering the Motive Cloud to its customers for use with the Motive Cloud Platform: Safety Hub, contribute to infringement of the '445 patent because such components constitute a material part of the alleged invention, are specially made or adapted for use in infringing the '445 patent, and are not staple articles of commerce suitable for substantial non-infringing use.

Dkt. 1 (Compl.) ¶ 82; *see also id.* ¶¶ 92 ('995 Pat.), 102 ('940 Pat.), 112 ('117 Pat.). This allegation tracks the statutory language but supplies no facts showing that any accused product satisfies it. Such a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," does not suffice. *Iqbal*, 556 U.S. at 678.

#### 1. Samsara Does Not Plausibly Allege That the Accused Products Lack Substantial Noninfringing Uses

Most glaringly, Samsara pleads no facts suggesting any accused product lacks a substantial noninfringing use. The Complaint merely parrots the statutory requirement that the products "are not staple articles of commerce suitable for substantial non-infringing use." Dkt. 1 (Compl.) ¶¶ 82, 92, 102, 112. That formulaic recitation does not state a plausible claim. *See Iqbal*, 556 U.S. at 678. More fundamentally, the Complaint and the Motive materials the Complaint incorporates

expressly identify uses for each accused product that do not implicate the corresponding asserted claim, contradicting Samsara's conclusory assertion that the products lack noninfringing uses. *See Tellabs*, 551 U.S. at 322 (permitting courts to consider "documents incorporated into the complaint by reference" when resolving Rule 12(b)(6) motions).[3]

**The accused AI Dashcams**: Claim 20 of the '995 patent, which Samsara alleges Motive infringes (Dkt. 1 (Compl.) ¶ 89) recites a method involving detection of a driver's head and hand movements (*id.* at ¶ 68). But the Complaint alleges that the Motive Dual-Facing AI Dashcam "includes an AI processor and computer vision algorithms intended to detect unsafe driving" and incorporates the product's spec sheet, which identifies numerous ***other*** functions. Dkt. 1 (Compl.) ¶ 38, n. 14; Ex. D (Dual-Facing AI Dashcam Spec Sheet). Those functions include detecting "close following," "unsafe lane change," "lane swerving," "stop sign violation," "collision," "near collision," "forward collision warning," "speeding over posted," "speeding over policy," "hard braking," "hard acceleration," and "hard cornering." Ex. D at 3. None of those functions depends on detecting the driver's head and hand movements as claim 20 requires. The Complaint thus identifies multiple uses of the Dual-Facing AI Dashcam unrelated to claim 20's requirements.

The incorporated materials identify additional uses for the AI Dashcam Plus. The Complaint cites a Motive press release describing "stereo vision" through "two synchronized road-facing lenses" for "Forward Collision Warning," "Lane Swerving," and "Close Following" alerts; "Automated License Plate Recognition" used to capture license plates for evidence in hit-and-runs; and "Advanced Sensor Fusion" used to detect events such as break-ins and collisions. Dkt. 1 (Compl.) ¶ 40, n. 15; Ex. E (AI Dashcam Plus Press Release) at 2. Samsara does not allege that

[3] Samsara incorporated those materials through citations to URLs rather than attaching them to the Complaint. Motive has provided copies as Exhibits A and D-G to this Motion.

any of these functions practices the detection of head-and-hand-movement method of claim 20. And Samsara itself describes the Samsara product that Motive supposedly copied as alerting drivers to road-facing conduct such as "tailgating." Dkt. 1 (Compl.) ¶¶ 36, 39. These alleged functions constitute substantial noninfringing uses, contradicting Samsara's conclusory assertions to the contrary.

**The accused Safety Hub**: Asserted claim 7 of the '445 patent recites a system for collection and correlation of data related to unsafe-driving events and vehicle speed and display of that data on a "geographical map." Dkt. 1 (Compl.) ¶¶ 64, 79. But the Complaint alleges that the Safety Hub provides several distinct functions, including a driver "Safety Score" providing a score for each driver, "Safety Score Factors" providing information about risk factors, and a "Safety Events" page displaying the geographic location of unsafe-driving behaviors on a map. Dkt. 1 (Compl.) ¶ 47. According to Samsara, only the Safety Events function implicates the "geographical map" limitation. Samsara does not allege that either the Safety Score or Safety Score Factors function displays unsafe-driving events or speed data on such a map.

The Motive Help Center article incorporated into the Complaint identifies Safety Hub tabs for "Overview," "Drivers," "Events," "Speeding," "Requests," and "Cameras." Dkt. 1 (Compl.) ¶ 47, n.17; Ex. A ("Safety Hub") at 1. Samsara does not allege that the functions of those tabs display events according to their geographic locations as required by claim 7. Nor does any of the article's eighteen screenshots depict events on a geographical map. Ex. A at 1-12. The Complaint therefore identifies substantial uses of the Safety Hub unrelated to the asserted claim.

**The accused Asset Gateways**: Asserted claim 1 of each of the '940 and '117 patents recites a system for tracking information associated with a storage unit including "information associated with the storage unit received from [] one or more sensors." Dkt. 1 (Compl.) ¶¶ 72, 76,

99, 109. Yet the Complaint alleges that Motive's Asset Gateways provide "real-time location and status tracking of a mobile asset" and incorporates a Motive spec sheet describing the Asset Gateway Mini as providing "real-time telematics and location tracking for ***all types*** of equipment." Dkt. 1 (Compl.) ¶ 52 (emphasis added); *id*. n. 22; Ex. F (Asset Gateway Mini Spec Sheet) at 1. The Complaint also describes the Samsara product that Motive supposedly copied as intended to track "virtually ***any*** unmanned mobile asset." Dkt. 1 (Compl.) ¶ 50 (emphasis added). Tracking information associated with equipment and mobile assets that are not "storage unit[s]" does not practice the asserted claims.

Another spec sheet incorporated into the Complaint identifies maintenance functions for the Asset Gateway Solar, including alerts for "Axle greasing," "Brakes," and "Tires," as well as reminders scheduled by "engine hours and mileage." Dkt. 1 (Compl.) ¶ 52, n.21; Ex. G (Asset Gateway Solar Spec Sheet) at 3. Samsara does not allege that these maintenance functions track information associated with a storage unit or otherwise practice claim 1 of either patent.

In short, Samsara offers only a conclusory assertion that the accused products lack substantial noninfringing uses, while its own allegations and incorporated materials identify numerous such uses. The contributory-infringement claims should be dismissed on that basis alone. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1337-39 (Fed. Cir. 2012).

#### 2. Samsara Does Not Plausibly Allege That the Accused Products Constitute a Material Part of the Invention

Samsara's Complaint also fails to assert facts identifying the alleged "material part of the invention." 35 U.S.C. § 271(c). For each Asserted Patent, Samsara alleges only that the accused products "constitute a material part of the alleged invention." Dkt. 1 (Compl.) ¶¶ 82, 92, 102, 112. The Complaint does not identify what product or component allegedly constitutes the material

part, which aspect of the claimed invention that component embodies, or why that component is material to practicing a claim of an Asserted Patent. *Mod. Font Applications*, 2022 WL 22873253, at *3-4 ("The Court finds that in pleading contributory infringement, the plaintiff must also allege that the defendant's accused product is material to practicing the claimed invention."). The statutory label, standing alone, is not a well-pleaded factual allegation. *Iqbal*, 556 U.S. at 678.

### 3. Samsara Does Not Plausibly Allege That the Accused Products Are Especially Made or Adapted for Infringing Use

Samsara's allegation that the accused products are "specially [sic] made or adapted for use in infringing" the Asserted Patents is likewise a bare recital of a legal conclusion, parroting § 271(c). Dkt. 1 (Compl.) ¶¶ 82, 92, 102, 112. The Complaint identifies no design, modification, configuration, or other product characteristic allegedly made or adapted for infringement of any asserted claim. Nor does it explain how any accused product was especially made or adapted for an infringing use, rather than for the multiple other functions the Complaint and incorporated materials identify. Merely repeating the statutory language does not supply the missing facts. *Iqbal*, 556 U.S. at 678.

Because Samsara does not plausibly allege that the accused products lack substantial noninfringing uses, are especially made or adapted for infringement, or constitute a material part of the claimed inventions, its pre-suit and post-suit contributory-infringement claims should be dismissed as to all four Asserted Patents.

## IV. CONCLUSION

For the foregoing reasons, Motive respectfully requests that the Court dismiss Samsara's (1) pre-suit willful infringement claims and (2) pre-suit and post-suit induced and contributory infringement claims as to each of the Asserted Patents.

Dated: August 21, 2026

Respectfully submitted,

By: */s/ Noah C. Graubart*
Aamir A. Kazi
(GA Bar. No. 104235)
kazi@fr.com
Noah C. Graubart
(GA Bar No. 141862)
graubart@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, SW, Ste 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Jared A. Smith
CA Bar No. 306576
jasmith@fr.com
**FISH & RICHARDSON P.C.**
12860 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678 5099

**COUNSEL FOR DEFENDANT,
MOTIVE TECHNOLOGIES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system on this 21st day of August, 2026.

*/s/ Noah C. Graubart*
Noah C. Graubart